In the

# United States Court of Appeals
## For the Seventh Circuit

————————

No. 06-3153

ISIDRO ALCALA,

*Plaintiff-Appellant*,

*v.*

EMHART INDUSTRIES, INCORPORATED,

*Defendant-Appellee.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 205—**Amy J. St. Eve**, *Judge.*

————————

ARGUED FEBRUARY 20, 2007—DECIDED JULY 5, 2007
PUBLISHED JULY 25, 2007[Œ]

————————

Before MANION, KANNE, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Isidro Alcala sued Emhart Industries for negligence after he injured his hand in a machine manufactured by Emhart's predecessor. A jury returned a verdict in favor of Emhart. Alcala appeals, challenging the district court's handling of voir dire and the jury instructions. We affirm.

————————

[Œ] This decision was originally released as an unpublished order. By the court's own motion, it is being reissued as a published opinion.

I.

Isidro Alcala worked as a machine operator at Lakin General Corporation. Lakin recycles used rubber tires. On April 24, 2001, Alcala was using a machine to split tires when a tire became stuck in the equipment. In an attempt to dislodge the tire, Alcala continued to push, but when the tire came free it pulled both the tire and his hand into the machine, resulting in serious injury. The splitting machine had been manufactured by Turner Tanning Machinery Company, as best as can be determined during the World War I era. Emhart Industries is a successor to Turner Tanning, and, after Alcala was injured, Alcala filed suit against Emhart.

In his suit against Emhart, Alcala alleged that Emhart was negligent in failing to provide a hand guard to prevent his injury. Following a jury trial, the jury returned a verdict in favor of Emhart. Alcala appeals, challenging the district court's refusal to ask the jury pool various questions on voir dire and the district court's rejection of Alcala's proposed jury instructions. Additional details related to voir dire and the jury instructions are included, as relevant, in the analysis.

II.

On appeal, Alcala first challenges the district court's handling of the voir dire process. At the beginning of voir dire, the district court summarized the case to the jury pool, explaining that Alcala was suing Emhart for personal injuries that occurred while Alcala was using a splitting machine at work. The judge then asked the potential jurors about their experiences with injuries from machinery, injuries at work, and if there were any law-

suits that resulted from those injuries. The district court also asked the jury pool whether any of their close friends or family members had suffered injuries at work and whether litigation resulted from those injuries. Additionally, the district court asked the jury pool whether any of them held "any beliefs—philosophical, moral, religious or otherwise—that would make it difficult for [them] to sit in judgment in this case." The court further asked if the potential jurors could be impartial to both sides.

The district court, however, refused to ask prospective jurors the following additional questions requested by Alcala:

25. What are your opinions regarding personal injury lawsuits?

26. What are your opinions concerning product liability lawsuits?

27. Have you or someone you know actively advocated tort reform?

28. Have you or someone you know actively campaigned for or against legislation concerning personal injury lawsuits?

29. Do you believe that personal injury lawsuits increase your cost of living?

32. Do you agree or disagree with the rule of law that allows a person to recover monetary damages for pain, suffering, or disability proximately resulting from the negligence of another? If you disagree with such a law, please explain whether or not you would follow such a law in this case if it is given to you.

Alcala argues on appeal that the district court abused its discretion in refusing to ask the prospective jurors these

questions and that this entitles him to a new trial. The district court has "broad discretion in determining how best to conduct *voir dire*." *United States v. Guy*, 924 F.2d 702, 708 (7th Cir. 1991). Moreover, litigants "do not have a right to have a particular question asked." *Gardner v. Barnett*, 199 F.3d 915, 920-21 (7th Cir. 1999). Voir dire is sufficient if the court has asked enough questions "to enable the parties to exercise challenges intelligently." *United States v. $94,000*, 2 F.3d 778, 788 (7th Cir. 1993).

In this case, the district court asked the jury pool sufficient questions so as to enable Alcala to intelligently exercise his challenges to the prospective jurors. Although Alcala complains that the questions asked were too general, the district court also asked the prospective jurors questions about their experiences, and the experiences of close family members and friends, with work-place injuries and litigation. Additionally, the district court informed the prospective jurors of the type of case at issue. After doing so and further questioning the jurors as to their experiences (and that of their close family and friends) with work-place accidents, the district court inquired as to whether any of the jurors held "any beliefs—philosophical, moral, religious or otherwise—that would make it difficult for [them] to sit in judgment in this case." The court further asked if the potential jurors could be impartial to both sides. This questioning was more than sufficient to enable the parties to exercise their challenges intelligently and the district court did not abuse its discretion in refusing to ask Alcala's tort-reform questions.

Alcala also challenges the district court's refusal to give certain jury instructions that he proffered. This court "review[s] the district court's decision concerning jury instructions under the abuse of discretion standard." *Spiller*

*v. Brady*, 169 F.3d 1064, 1066 (7th Cir. 1999). Moreover, "[o]n a motion for a new trial based on improper instructions to the jury, we ask whether the instructions, when considered in their entirety and not in isolation, were sufficient to inform the jury of the applicable law." *Id.* (internal quotation omitted).

Alcala challenges the district court's rejection of five of his proffered jury instructions. Specifically, Alcala challenges the district court's refusal to give portions of his Proposed Jury Instructions 17 and 18. Proposed Jury Instruction 17 stated:

> When I use the word 'negligence' in these instructions, I mean the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide.

> In determining whether defendant Turner Tanning Machinery Company was negligent, you must consider whether defendant Turner Tanning Machinery Company did something that a reasonable manufacturer would not have done or failed to do something that a reasonable manufacturer would have done under the same circumstances.

Proposed Jury Instruction 18 was identical, except that instead of (improperly) naming the defendant as Turner Tanning Machinery Company, it identified the defendant as Emhart.

The district court refused to give the full text of these proposed instructions and instead used Emhart's Jury

Instruction 4. Jury Instruction 4 included the exact language as contained in the first paragraph of Proposed Jury Instructions 17 and 18, but it did not include the second paragraph of Proposed Jury Instructions 17 and 18. More specifically, Jury Instruction 4 stated:

> When I use the word "negligence" in these instructions, I mean the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide.

Jury Instruction 4.

Alcala claims that Jury Instruction 4 was insufficient because it instructed the jury to judge Emhart's conduct by a "reasonably careful person" standard, as opposed to a "reasonable manufacturer standard." Alcala claims that the appropriate standard was the "reasonable manufacturer standard," citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000). Alcala's reliance on *Toole* is misplaced because *Toole* involved a product liability case under Alabama law, whereas Illinois substantive law governs this case. The only Illinois case that has directly addressed this issue is *Eaves v. Hyster Co.*, 614 N.E.2d 214 (Ill. App. Ct. 1993). In *Eaves,* the court held that "[i]n Illinois a manufacturer has the same general duty of care as any defendant." *Id.* at 217. *Eaves* further explained: "While jurors may presume a manufacturer has an expert's level of *skill* and *knowledge* with regard to a manufactured product, this is not the same as saying that a manufacturer has an elevated duty of care beyond that of 'due care'. . . ." *Id.* at 218. In *Blue v. Environmental Engineering*,

Inc., 828 N.E.2d 1128, 1141 (Ill. 2005), the Illinois Supreme Court noted that in a negligence product liability case, the plaintiff could prevail by showing that "the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed . . . ." However, the Supreme Court did not adopt an elevated duty of care beyond that of due care. Rather, under Illinois law, the duty of care is the same general duty of care any defendant has, but when the defendant is a manufacturer, the jury may presume that the manufacturer has the skill and knowledge that other manufacturers at the time possessed. *Eaves*, 614 N.E.2d at 217. Thus, under *Eaves*, Alcala's proposed jury instruction was misleading because it spoke of a "reasonable manufacturer" and it could have wrongly caused the jury to believe that manufacturers have a higher standard of care—which is not the law in Illinois. Accordingly, the district court did not abuse its discretion in rejecting it.[1]

---

[1] The Illinois Supreme Court in *Blue* did not address *Eaves* or the question of whether a manufacturer had a heightened standard of care. *Blue*, however, noted that one way of establishing negligence would be for the plaintiff to show that "the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed . . . ." *Blue*, 828 N.E. at 1141. In this case, the district court provided the jury with an issue instruction informing the jury that the plaintiff's claim was that the defendant was negligent in that: "The defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed by not placing a guard at the point of operation." This language was identical to that used in *Blue*. The district court further informed the jury that "[t]he

(continued...)

Next, Alcala challenges the district court's refusal to give Proposed Jury Instructions 21 and 22. Both Proposed Jury Instructions 21 and 22 stated: "A manufacturer is under a non-delegable duty to make a product which is reasonably safe, and a manufacturer is held to the degree of knowledge and skill of experts." Proposed Jury Instruction 21 added: "That means it was the duty of the defendant to be free from negligence." Alcala claims that the district court erred in rejecting these proposed instructions because it was important for the jury to know that Emhart's duty was a non-delegable duty.

Whether the jury should have been informed in this case that Emhart's duty was a "non-delegable" duty, however, is beside the point[2] because Alcala's Proposed Jury Instructions 21 and 22 misstated the "duty" that Emhart owed

---

[1] (...continued)

plaintiff has the burden of proving each of the following propositions: First, that the defendant acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions, and that in so acting or failing to act, the defendant was negligent." Taken together, then, the instructions properly informed the jury of the issues and the controlling law. *Alloy Intern. Co. v. Hoover-NSK Bearing Co., Inc.*, 635 F.2d 1222, 1226 (7th Cir. 1980) (explaining that "we determine whether the jury was sufficiently informed, by the instructions the court did give and by other means, of the issues and its duty to decide them").

[2] On appeal, Emhart claims that there was no need for a non-delegable duty instruction because there was no evidence in the record to support such an instruction. We need not decide this issue, however, because, as discussed above, the "duty" defined as "non-delegable" in Alcala's proposed instructions misstated the law.

Alcala. Under Proposed Jury Instructions 21 and 22, Emhart had a "duty" to "make a product which is reasonably safe . . . ." However, in Illinois, a negligence action looks to the reasonableness of the defendant's conduct; the fact that a product is not "reasonably safe" is not enough to create liability for negligence. *See Blue*, 828 N.E.2d at 1141 ("In a negligence defective design case, the focus is on the conduct of the defendants, but in a strict liability defective design case, the focus is on the product."). Rather, as the Illinois Supreme Court explained in *Blue*:

> [T]o establish a negligence claim for a defective design of a product, a plaintiff must prove that either (1) the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed, or (2) that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity.

*Blue*, 828 N.E. 2d at 1141. Thus, proposed Jury Instructions 21 and 22 did not properly define Emhart's "duty" under Illinois law. *Id.* Accordingly, the district court did not abuse its discretion in rejecting those proposed jury instructions because the "duty" that Alcala wanted to say was "nondelegable" did not exist.

Finally, the district court rejected Alcala's proposed Jury Instruction 34, which provided:

> Defendant Emhart Industries, Inc., has the duty to manufacture and sell a product that is not in an unreasonably dangerous condition. That duty cannot be delegated to another. It is not a defense for the defendant Emhart Industries, Inc., that another person,

including plaintiff's employer, failed to make the product free from unreasonably dangerous conditions. When I use the phrase "cannot be delegated," I mean that the duty must be performed by defendant Emhart Industries, Inc., and cannot be left to some other entity.

Again, this instruction misstates the law by confusing the strict liability standard with the negligence standard. For a negligence claim, which is the only claim Alcala presented in this case, Alcala had to prove that Emhart acted negligently, either by deviating from the standard of care that other manufacturers in the industry followed or by showing that it knew or should have known that the product was unreasonably dangerous. Although Alcala claims that this instruction was necessary to inform the jury of the non-delegable nature of Emhart's duty, because Proposed Jury Instruction 34 did not accurately state Illinois law regarding Emhart's duty, the district court properly rejected it.

## III.

The district court did not abuse its discretion in conducting voir dire and in rejecting Alcala's questions because the questions posed to the prospective jurors more than adequately allowed the parties to exercise their challenges intelligently. The district court also did not abuse its discretion in rejecting Alcala's proposed jury instructions because the proposed instructions misstated Illinois negligence law. For these and the foregoing reasons, we AFFIRM.

No. 06-3153                                                  11

A true Copy:

     Teste:

                          _____
                          *Clerk of the United States Court of*
                             *Appeals for the Seventh Circuit*